■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH S. HINES, Appellant.—Levine, J. Appeal from a judgment of the County Court of Montgomery County (Aison, J.), rendered November 16, 1987, convicting defendant upon his plea of guilty of the crime of criminal possession of a controlled substance in the third degree.

On August 19, 1986 at approximately 3:30 A.M., State Trooper Thomas Aiken was patrolling the Thruway with his partner, Trooper Brian Callahan, heading in an easterly direction in the Town of Florida, Montgomery County. According to the Troopers' testimony, Aiken and Callahan observed a car being driven westbound, in the passing lane, with its high beams on. Aiken, who was also traveling in the passing lane, flashed his high beams two or three times in an attempt to get the driver to reduce the intensity of his headlights. When the driver failed to respond, Aiken made a U-turn at the next break in the median and pulled the driver over. Aiken approached the driver's side of the vehicle while Callahan approached the passenger's side. Defendant rolled down the window and Aiken asked for his license and registration and informed defendant that he was being stopped for having his high beams on. When Aiken asked defendant why he had failed to switch to his low beams, defendant replied that he "forgot" and then proceeded to switch his headlights to low intensity.

When defendant handed Aiken his license and registration, Aiken detected the odor of burning marihuana from inside the vehicle. Aiken testified that he was familiar with the smell of marihuana based upon his participation in a State Police Academy drug training course and that he had made approximately 100 arrests for drug-related offenses.

Shining his flashlight into the car, Aiken observed a small cigarette butt in the ashtray that was squashed up, had no filter, and was burned down to the end. Aiken testified that

when asked to hand him the ashtray, defendant pulled the ashtray out of the console and then removed the butt and threw it on the floor by his feet before handing the ashtray to Aiken. Aiken then asked defendant to step out of the car and defendant complied. Aiken retrieved the butt from inside the car, examined it and determined that it looked and smelled like marihuana. Aiken then brought defendant to the rear of the car and signaled to Callahan to bring the other two occupants back to the same spot. While walking to the rear of the car, Aiken observed defendant throw a packet of aluminum foil to the ground. Aiken picked up the packet, opened it and observed a small amount of white powdery substance, which appeared to be cocaine. Aiken then informed defendant that he was under arrest for possession of cocaine. Aiken returned to the vehicle and removed the keys from the ignition and also a knife that he saw sticking out between the seat and the console.

Aiken then proceeded to the rear of the car and opened the hatchback. He had observed that no barriers separated the rear compartment from the back seat. Aiken noticed that a screw was missing from the plastic molding on the right-hand side. He pulled the plastic back and looked in with his flashlight and observed a canvas suitcase inside. Aiken asked defendant what it was doing there, to which defendant replied that he did not know. Aiken pulled the suitcase out and opened it. Inside he found two brown paper bags and 11 clear plastic bags. The brown paper bags contained many aluminum foil packets wrapped in plastic, and the clear plastic bags appeared to contain marihuana. Defendant and his two female companions were placed under arrest and put in the back of the troop car. Aiken then searched the rest of the vehicle for further evidence and found only some rolling papers in the console area.

Defendant was subsequently indicted on charges of criminal possession of a controlled substance in the second degree, criminal possession of marihuana in the first degree and endangering the welfare of a child, and for the offenses of unlawful possession of marihuana and failure to dim headlamps.

Defendant moved to, *inter alia,* suppress the tangible physical evidence that was obtained and to determine whether sufficient probable cause existed for his arrest. A suppression hearing was held at which defendant testified. Defendant's account of the incident differed from Aiken's on the following facts: defendant claimed he was driving in the right-hand and

not the passing lane when he was stopped; defendant denied that marihuana was being smoked in the car and that he removed a butt from the ashtray before handing it to Aiken; defendant denied having thrown a foil packet to the ground; and defendant claimed that Aiken removed the screws from the plastic panel in order to discover the bag inside. Defendant also testified that the Troopers told him they would let him go if he gave them the $400 that he had on his person. Defendant, however, admitted that when he was pulled over by the Troopers he was returning to Rochester from New York City, where he knew marihuana had been placed in his car for him to transport back to Rochester.

Following the hearing, County Court denied defendant's motion to suppress, finding that the initial stop of defendant's car was lawful, the plain view doctrine justified Aiken's seizure of the butt observed in the ashtray and provided probable cause, along with the odor of marihuana and the foil packet thrown by defendant, for defendant's arrest and the search of the vehicle.

Defendant accepted a plea bargain agreement which permitted him to plead guilty to criminal possession of a controlled substance in the third degree with the understanding that County Court would impose a sentence of 3 to 9 years' imprisonment. After he was sentenced in accordance with the plea agreement, this appeal by defendant ensued.

Initially, we reject defendant's contention that his car was unlawfully stopped. A police car may properly stop a vehicle for a "routine traffic check" based upon reasonable suspicion of a violation of the Vehicle and Traffic Law (People v Ingle, 36 NY2d 413, 414; People v Hoffman, 135 AD2d 299, 301). Here, Aiken's testimony that defendant's headlights were very bright and dazzling and affected his vision supported a reasonable suspicion that a violation of Vehicle and Traffic Law § 375 (3) existed (see, People v Meola, 7 NY2d 391, 395-397).

We also agree with County Court's determination that seizure of the cigarette butt in the ashtray was justified under the plain view doctrine. Moreover, based on the odor of marihuana emanating from the vehicle and the discovery of the butt in the ashtray, Aiken properly ordered defendant out of the car and probable cause existed to search the vehicle (see, People v Belton, 55 NY2d 49; People v Chestnut, 43 AD2d 260, affd 36 NY2d 971). Defendant, however, provided Aiken with additional grounds for his arrest and a search when, unprompted by Aiken, he threw the foil packet to the ground

which Aiken retrieved and determined that it appeared to contain cocaine (see, *People v Boodle,* 47 NY2d 398, 402, *cert denied* 444 US 969). We reject defendant's contention that it was impermissible for Aiken to open the foil wrapper because it was not apparent that it contained evidence of criminality.

At the time that Aiken undertook a search of the entire vehicle, including closed containers, he had probable cause to arrest defendant for possession of drugs and to believe that the car would contain further evidence relating to that crime (see, e.g., *People v Blasich,* 73 NY2d 673, 678-681). Moreover, the fact that defendant may not have been "formally" under arrest (i.e., handcuffed and informed of *Miranda* rights) until after the canvas bag and its contents were discovered does not vitiate the search (see, *supra,* at 681). We have considered defendant's remaining contentions and find them also to be without merit.

Judgment affirmed. Mahoney, P. J., Casey, Weiss, Levine and Harvey, JJ., concur.