THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEAGAN RUSSEL ALLEN, Appellant. [932 NYS2d 142]—

The defendant was charged by indictment with criminal possession of a weapon in the second degree, criminal possession of a controlled substance in the seventh degree, and unlawful possession of marihuana.

At the suppression hearing, a New York State Trooper testified that on June 22, 2007, at approximately 3:45 A.M., he observed the defendant's vehicle approaching from the opposite direction with its high beams on. The high beams caused the State Trooper to squint his eyes as he was driving. As a result, the State Trooper turned his vehicle around, followed the defendant's vehicle, and then pulled the defendant over. The State Trooper's partner approached the defendant's vehicle, and from his position outside that vehicle, observed a handgun protrud-

ing from beneath the driver's seat of the defendant's car. Following a search of the defendant's vehicle, the State Troopers recovered, inter alia, the handgun, cocaine, and marihuana.

The County Court, after a hearing, denied those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials. Specifically, the County Court found that the defendant's high beams hindered the State Trooper's vision so as to provide probable cause to believe that the defendant had violated Vehicle and Traffic Law § 375 (3). Thereafter, the defendant entered a plea of guilty to criminal possession of a weapon in the second degree.

The defendant appeals, challenging, among other things, the hearing court's suppression ruling. We reverse.

A police officer may lawfully stop a vehicle based upon probable cause that there has been a Vehicle and Traffic Law violation (*see People v Robinson*, 97 NY2d 341, 348-349 [2001]; *People v Johnson*, 83 AD3d 733 [2011]; *People v Sluszka*, 15 AD3d 421, 423 [2005]). To establish a violation of Vehicle and Traffic Law § 375 (3), the People must show (1) the use of high beams when an approaching vehicle is within 500 feet, and (2) interference with the vision of that driver by reason of such high beams (*see People v Meola*, 7 NY2d 391, 395 [1960]). We agree with the defendant's contention that in order to constitute interference, a defendant's use of high beams must "hinder or hamper the vision of [the] approaching motorist" so as to actually have an effect upon the other driver's operation of his or her vehicle (*id.* at 395). For example, in *People v Meola,* the Court of Appeals found sufficient proof of interference where a State Trooper testified that the defendant's high beams caused the officer to reduce his speed (*id.* at 395-396).

Here, by contrast, the proof adduced at the suppression hearing was insufficient to demonstrate that the defendant's use of his high beams affected the State Trooper's operation of his vehicle. Although the State Trooper was caused to squint, the defendant's high beams did not hinder or hamper the vision of the State Trooper so as to affect the operation of his vehicle.

We disagree with the dissent's conclusion that the Court of Appeals in *Meola* determined that merely causing a driver to squint, absent a tangible manifestation of interference with the driver's operation of the motor vehicle, is sufficient to establish probable cause to believe that a defendant violated Vehicle and Traffic Law § 375 (3). To the contrary, the Court of Appeals in *Meola* explained that the conduct of an accused which is proscribed by Vehicle and Traffic Law § 375 (3) is the operation of

high beams so as to produce a dazzling light, and "the effect of such conduct upon the complainant is interference with his [or her] vision and hence with the operation of his [or her] car" (*People v Meola*, 7 NY2d at 395 [internal quotation marks omitted]). Otherwise, if a defendant's high beams were to simply cause another driver to blink, that conduct may be found to constitute a violation of Vehicle and Traffic Law § 375 (3).

Therefore, the stop of the defendant's vehicle was improper, and all further actions by the police as a direct result of the stop were illegal (*see People v Rose*, 67 AD3d 1447, 1449 [2009]). Since there was no other basis to stop the defendant's vehicle, the evidence recovered as a result of the unlawful stop must be suppressed.

In light of our determination, the defendant's remaining contentions have been rendered academic. Skelos, J.P., Leventhal, and Hall, JJ., concur.

Balkin, J., dissents and votes to affirm the judgment with the following memorandum.

Balkin, J. (dissenting). I respectfully dissent, and vote to affirm the judgment because I conclude that the State Trooper had probable cause to stop the defendant's vehicle based on one or more violations of the Vehicle and Traffic Law.

As relevant here, section 375 (3) of the Vehicle and Traffic Law provides that "whenever a vehicle approaching from ahead is within five hundred feet . . . the headlamps, if of the multiple beam type . . . shall be operated so that dazzling light does not *interfere* with the driver of the approaching vehicle" (Vehicle and Traffic Law § 375 [3] [emphasis added]). The testimony at the suppression hearing established that the defendant's and the State Trooper's vehicles were approaching from opposite directions and were less than 500 feet away from each other. It was nighttime, and the defendant's high beams were illuminated. Further, as my colleagues in the majority recognize, the defendant's high beams "caused the State Trooper to squint his eyes as he was driving." Nothing more is required to constitute a violation of Vehicle and Traffic Law § 375 (3).

According to our Court of Appeals, " 'interfere' plainly means to hinder or hamper the vision of an approaching motorist" (*People v Meola*, 7 NY2d 391, 395 [1960]). In *Meola*, the Court rejected the defendant's constitutional challenge to the statute on the ground that "interfere" was vague. The Court held that its meaning was sufficiently clear: "[t]he interference contemplated was plainly hampering or hindering the vision of the approaching motorist, and this element of interference is certainly susceptible of factual proof" (*id.* at 397; *cf. People v Rose*, 67

AD3d 1447, 1449 [2009]). Although the Court in *Meola* described the particular effect of the defendant's high beams on the complainant—the State Trooper slowed down—it did not suggest that either an actual mishap or a prudent response by the driver affected by the "dazzling light" is a necessary element of the violation. In other words, contrary to the conclusion of my colleagues, the statute requires only interference with the complainant's vision and not some measurable effect on the operation of the complainant's vehicle. That the defendant's operation of his high beams caused the State Trooper here to squint gave the State Trooper probable cause to believe that the defendant was committing a traffic infraction.

Inasmuch as the State Trooper's testimony established probable cause to stop the defendant's vehicle (*see People v Johnson*, 83 AD3d 733 [2011]), I would hold that the suppression court properly denied those branches of the defendant's omnibus motion which were to suppress the evidence resulting from that stop and his statements to law enforcement officials.

Next, by pleading guilty, the defendant forfeited review of his claim that the County Court erred in determining a motion in limine as to the admissibility of certain evidence (*see People v Campbell*, 73 NY2d 481, 486 [1989]; *People v Perry*, 60 AD3d 974 [2009]; *People v Mead*, 198 AD2d 612, 613 [1993]). To the extent the defendant contends that his plea was rendered involuntary by reason of the County Court's decision on the motion in limine, his contention is unpreserved for appellate review as he never moved to withdraw his plea (*see People v Pellegrino*, 60 NY2d 636 [1983]; *People v Graham*, 261 AD2d 414 [1999]).

Lastly, I find nothing in the record which would cast doubt upon counsel's effectiveness (*see People v Benevento*, 91 NY2d 708, 712-713 [1998]; *People v Baldi*, 54 NY2d 137, 147 [1981]).

Accordingly, I would affirm the judgment.