■ In the Matter of CORY A. WICKHAM, Petitioner, v NEW YORK STATE DEPARTMENT OF MOTOR VEHICLES, Respondent. [61 NYS3d 162]—

Clark, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent revoking petitioner's driver's license.

On October 31, 2014, a police officer initiated a traffic stop of petitioner and, based on the ensuing encounter, arrested him for driving while intoxicated. Petitioner was then transported to the police station, where he refused to submit to a chemical test to measure his blood alcohol content. Petitioner was subsequently charged, by a simplified information, with driving while intoxicated (see Vehicle and Traffic Law § 1192 [3]) and his driver's license was suspended pending a refusal revocation hearing pursuant to Vehicle and Traffic Law § 1194 (2) (c). Following the hearing, at which petitioner declined to testify, the Administrative Law Judge (hereinafter ALJ) revoked petitioner's driver's license, and respondent's Administrative Appeals Board subsequently affirmed the determination.* Petitioner then commenced this CPLR article 78 proceeding challenging respondent's determination and the matter was transferred to this Court (see CPLR 7804 [g]).

Any person who operates a motor vehicle is deemed to have consented to a chemical test to determine his or her blood alcohol content, provided that the chemical test is administered by, or at the direction of, a police officer who has reasonable grounds to believe that such person operated a motor vehicle under the influence of alcohol in violation of Vehicle and Traffic Law § 1192 (see Vehicle and Traffic Law § 1194 [2] [a] [1]; *Matter of Craig v Swarts*, 68 AD3d 1407, 1408 [2009]). Such rea-

---

* The Appeals Board granted petitioner's request for a stay of the revocation pending a decision on the administrative appeal, but reinstated the revocation following its affirmance of the ALJ's determination.

sonable grounds are "determined by viewing the totality of circumstances surrounding the incident," including "any visible or behavioral indication of alcohol consumption" (Vehicle and Traffic Law § 1194 [2] [a] [3]; *see Matter of DeMichele v Department of Motor Vehs. of N.Y. State*, 136 AD3d 629, 631 [2016]). If the person so arrested refuses to submit to a chemical test, despite having been warned of the consequences of such refusal, his or her driver's license is subject to immediate suspension and subsequent revocation (*see* Vehicle and Traffic Law § 1194 [2] [b]). Such person may then challenge the suspension at a refusal revocation hearing, at which the issues are limited to whether the police officer had reasonable grounds to believe that he or she was operating a motor vehicle in violation of Vehicle and Traffic Law § 1192, whether the arrest was lawful, whether the officer administered a "sufficient warning" of the consequences of refusing a chemical test and whether he or she refused to submit to the test (Vehicle and Traffic Law § 1194 [2] [c]; *see Matter of Berlin v New York State Dept. of Motor Vehs.*, 80 AD3d 911, 913 [2011]). If, after a hearing, all issues are found to be in the affirmative, the person's driver's license is immediately revoked (*see* Vehicle and Traffic Law § 1194 [2] [c]).

At the hearing, the arresting officer testified that he stopped petitioner's vehicle after observing petitioner fail to use a directional signal prior to making three turns (*see* Vehicle and Traffic Law § 1163 [a]). He stated that, upon approaching the vehicle and engaging with petitioner, he detected the odor of alcohol emanating from the vehicle. According to the arresting officer, petitioner admitted that he had been at a bar, where he had consumed "a little bit" of alcohol, and he mistakenly produced his credit card when asked for his driver's license. The officer further testified that, at the scene, petitioner refused to take a prescreen alco-sensor test or engage in any field sobriety tests. While the arresting officer initially testified that petitioner failed three administered field sobriety tests, he stated at various points throughout his testimony that he could not definitively testify as to his observations of petitioner outside the vehicle without first referencing his notes, and he immediately corrected his testimony once he looked at such notes on cross-examination. Furthermore, the report of refusal, which was admitted into evidence, confirmed that petitioner refused to submit to the field sobriety tests (*see Matter of Peeso v Fiala*, 130 AD3d 1442, 1443-1444 [2015], *lv denied* 26 NY3d 910 [2015]).

As to the required warning and petitioner's refusal, the ar-

resting officer testified that he informed petitioner that "[a] refusal to submit to a chemical test . . . [would] result in the immediate suspension and subsequent revocation of [his] license or operating privilege" and that such refusal could be introduced as evidence at any subsequent trial, hearing or proceeding. The arresting officer stated that petitioner refused to submit to a chemical test after this warning and that, upon two additional recitations of the warning by another police officer, petitioner twice more refused the test. Testimony given by the officer who assisted in processing petitioner's arrest was largely consistent with the testimony of the arresting officer and confirmed that, on three occasions, petitioner was given a clear and unequivocal warning as to the consequences of refusing a chemical test and nevertheless refused the test. The report of refusal provided further evidence of the warnings issued and petitioner's refusal.

Petitioner raises certain inconsistencies in the police officers' testimony and the documentary evidence. However, the discrepancy in the time of the arrest on the simplified information and the report of refusal was minor and, in any event, collateral to the main issues. Further, contrary to petitioner's contention, the inconsistencies in the officers' testimony did not render their testimony so unworthy of belief as to be incredible as a matter of law (see *Matter of Cotugno v Commissioner of Motor Vehs.*, 304 AD2d 1030, 1031 [2003]). Rather, any such inconsistencies presented a credibility issue, which the ALJ expressly resolved against petitioner (see *Matter of Giacone v Jackson*, 267 AD2d 673, 674 [1999], *lv denied* 94 NY2d 762 [2000]; *Matter of Liuzzo v State of N.Y. Dept. of Motor Vehs. Appeals Bd.*, 209 AD2d 618, 618 [1994]; *Matter of Lawrence v Adduci*, 183 AD2d 1009, 1009 [1992]). Considering the testimonial and documentary evidence, together with the negative inference that the Appeals Board permissibly drew from petitioner's failure to testify at the hearing (see 15 NYCRR 127.5 [b]; *Matter of Hickey v New York State Dept. of Motor Vehs.*, 142 AD3d 668, 669 [2016]; *Matter of Peeso v Fiala*, 130 AD3d at 1443-1444; *Matter of Mannino v Department of Motor Vehs. of State of N.Y.—Traffic Violations Div.*, 101 AD3d 880, 881 [2012]), we find that the arresting officer had reasonable grounds to believe that petitioner operated a motor vehicle in violation of Vehicle and Traffic Law § 1192 and that petitioner refused to submit to a chemical test after having been lawfully arrested and sufficiently warned of the consequences of such refusal (see Vehicle and Traffic Law § 1194 [2] [c]; *Matter of Giacone v Jackson*, 267 AD2d at 674; *Matter of Dykeman v Jackson*, 262 AD2d 877, 877-878 [1999]). Accordingly, the determination is supported by substantial evidence and the petition is dismissed.

Egan Jr., J.P., Lynch, Devine and Aarons, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.